**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| v. : | Case No. |
| : | 7:05-CR-06 (HL) |
| **PENNY ADKINSON,** : | |
| : | |
| **Defendant.** : | |

# O R D E R

Before this Court is Defendant's Motion to Dismiss Indictment (Doc. 13). For the reasons set forth below the Motion is denied.

**I.   FACTS**

On September 12, 2004, Defendant, Penny Adkinson, an employee of Center View Homes of Adel, Georgia, ("Center View") allegedly embezzled a United States Treasury check, an IRS refund, payable to Center View. Thereafter, the government contends, Adkinson fraudulently and without authority opened a bank account at Cook Community Bank of Adel, Georgia, in the name of Center View. Adkinson then allegedly presented to Cook Community Bank a fraudulent corporate resolution naming herself as the designated agent of Center View. Thereafter, the government asserts Adkinson deposited Center View's IRS refund check into this account. The check had an endorsement, purportedly from Center View "by" Adkinson.

Over the next ten days, the government avers that Adkinson wrote five checks from the account and misappropriated the funds for her own use. Adkinson was eventually caught and fired by Center View. The day after her dismissal, Adkinson allegedly wrote a final check payable to "cash," thus exhausting all of the funds in the account. Adkinson was indicted under 18 U.S.C. § 510(a)(2) for passing, uttering, and publishing as true with the intent to defraud, or attempting to do so, a United States

Treasury check bearing a falsely made or forged endorsement.

Adkinson argues that this conduct cannot be criminalized as forgery under § 510(a)(2) because she signed the check in her own name as an agent of her employer. The parties have submitted their arguments in briefs, and on July 7, 2005, the Court held a hearing on the matter.

## II.   ANALYSIS

### A.   The Selvidge agency endorsement defense applies as a matter of law to § 510(a)(2)?

Under 18 U.S.C. § 510(a)(2), "Whoever, with intent to defraud . . . passes, utters, or publishes, or attempts to pass, utter, or publish, any Treasury check or bond or security of the United States bearing a falsely made or forged endorsement or signature[,] shall be fined under this title or imprisoned not more than ten years, or both." 18 U.S.C.A. § 510(a)(2) (West 2000 & Supp. 2004).

Adkinson argues that § 510(a)(2), the statute under which she was indicted, and 18 U.S.C. § 495, a much older statute addressing forgery in general under which she was not indicted, apply to the same conduct. Thus, she asserts that the meanings of forgery and false making under §495 apply §510(a). The Eleventh Circuit has not addressed this issue. Adkinson cites Selvidge v. United States, 290 F.2d 894 (10th Cir. 1961), which dealt with an employee who, without the authority of her employer, added her own signature on the back of a check and converted the proceeds of the check to her own use. The Selvidge court held that this conduct, while a misrepresentation of authority, was not forgery in violation of § 495. Id. at 895.

The Selvidge agency endorsement defense was approved by the Supreme Court of the United States in Gilbert v. United States, 370 U.S. 650 (1962) (plurality

opinion).¹  The rule that emerges from these cases is that one who executes an instrument purporting on its face to be executed by him as an agent, when in fact he has no authority to execute such instrument, is not guilty of forgery.  United States v. Jaynes, 75 F.3d 1493, 1500 (10th Cir. 1996) (citing Selvidge, 290 F.2d at 895).  And while Selvidge is an older case, its holding was recently reiterated, although in dicta, in the Tenth Circuit's Jaynes case in the context of § 510(a)(2).  75 F.3d at 1500-01.

Not mentioning Gilbert or Jaynes, the government argues that Selvidge, decided under § 495, is inapplicable because § 510(a)(2) criminalizes a broader swath of conduct than § 495.  For support, the government cites Edwards v. United States, 814 F.2d 486 (7th Cir. 1987), in which the Seventh Circuit stressed, "Section 495 is an old statute that deals very broadly with fraud against United States by forgery or counterfeiting; section 510 is a recent statute that deals specifically with forged signatures and endorsements on Treasury checks."  814 F.2d at 488.

The government stresses that "[t]he loophole that Congress sought to plug by section 510 is the following: if a thief stole a Treasury check that had been endorsed by the payee, and been endorsed in his own name and cashed the check, there would be no violation of section 495."  Id. at 489 (internal citations omitted).  Thus, "[t]he only purpose revealed by the legislative history of section 510 is to close the loophole in section 495."  Id. at 489.  The government also analogizes United States v. Fields, 783 F.2d 1382 (9th Cir. 1986), to this case in support of its argument.  Consequently, the government seems to argue that § 510(a)(2) closes a loophole which might allow Adkinson to escape liability by claiming that she did not forge another person's name,

---

¹While the Eleventh Circuit has recognized that the Supreme Court's plurality opinions are not binding, Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1189 n.3 (11th Cir. 2004), this Court believes that Gilbert is persuasive and instructive in this case.

but only signed her own name to the Treasury check.

Further, at oral argument, the government argued that the Eleventh Circuit's Pattern Jury Instructions state the following with regard to § 510(a)(2), "The term 'forgery' means that the payee's endorsement on a check was written or signed without the payee's permission or authority." (11th Cir. Pattern Jury Instrucs. at 159.) This, the government contends, also shows that the Selvidge agency endorsement defense does not apply.

Here, Plaintiff has the better argument. First, Plaintiff is correct that § 510(a)(2) covers much of the same conduct as § 495. However, the government is also correct that the differences between the sections are manifest, as detailed in United States v. Williams, 850 F.2d 142, 144 (3d Cir. 1988).[2] Thus, § 510, taken as whole, is both

---

[2] The Williams court stated the following:

> We recognize that to violate section 495 by uttering or publishing a false, forged, altered, or counterfeited writing a person must represent the writing as genuine. See United States v. Hyatt, 565 F.2d 229, 232-33 (2d Cir. 1977). But contrary to Williams' assertions, section 510(a)(2) is not merely a mirror image or recasting of section 495 modified to refer to Treasury checks, bonds and securities bearing a falsely made or forged endorsement or signature. Indeed, the differences between sections 495 and 510(a)(2) are manifest. First, under section 495 a person convicted of uttering or passing the writing must have an "intent to defraud the United States." Under section 510(a)(2) he need only have an "intent to defraud." Second, section 510(a)(2) proscribes attempts to pass, utter or publish the instruments involved. Nothing in section 495 makes an attempt to utter or publish the instruments an offense. Third, section 495 includes as an element of the offense that the government establish that the writing be uttered or published "as true." There is no equivalent requirement in section 510(a)(2). Fourth, Congress in section 510(a)(2) expanded upon "utters" and "publishes," the methods of transfer mentioned in section 495, by adding "passes."
>
> In view of these differences between sections 495 and 510(a)(2) the latter section cannot possibly be deemed a mirror image of the former. Further, two of the changes, omission in section 510(a)(2) of the section 495 requirement that the instrument be represented "as true" and the addition in the category of transfers proscribed in section 510(a)(2) of "passes," relate directly to this case. It must, of

-4-

broader and narrower than § 495. Nevertheless, none of the differences outlined by the relevant cases seem to affect the Selvidge agency endorsement defense as it would apply to § 510(a)(2).

Second, as Adkinson's attorney noted in his oral argument, the loophole closed by § 510 was the stolen check loophole, and that loophole was closed by § 510(b)–not § 510(a)(2). Indeed, the only difference between § 510(a)(2) and § 495 that is applicable to this case is that § 510(a)(2) made clear that it pertained to forgery and related misconduct as it related to government obligations when § 495 was unclear about government obligations. Edwards, 814 F.2d at 490. Therefore, the Selvidge agency endorsement defense, if it can be characterized as a loophole, does not appear to be the loophole closed by § 510(b). And even if it were, Adkinson was not indicted under § 510(b).

Third, the government's citation to Fields about § 510(b)'s loophole closure is not a proper analogy to this case. In Fields, the Ninth Circuit reinstated a jury's verdict of conviction under 18 U.S.C. § 510(b) after the district court granted a judgment of acquittal on grounds that the checks were not written on at all, thus bore no falsely

---

course, be remembered that Congress in enacting 18 U.S.C. § 510 specifically considered the deficiencies in section 495 and did not entirely track its provisions. Therefore, the omission of the requirement in section 510(a)(2) that the instrument be transferred "as true" cannot be ignored. Surely if Congress had intended that transfer include a representation of genuineness under section 510(a)(2), it would not have omitted the "as true" language. In this regard we point out that the significance of the words "as true" in section 495 is hardly new. In United States v. Nelson, 27 F. Cas. 80 (D.C.W.D. Mich. 1867) (No. 15,861), the court held that a defendant could be convicted of passing counterfeit currency to an undercover agent who knew what he was buying since the statute involved did not require the currency be passed "as true."

850 F.2d at 144-45.

made or forged endorsements or signatures in violation of the statute. Id. at 1383. The Ninth Circuit disagreed and held that § 510(b) applied to the crime of delivery of stolen treasury checks whether or not they bear falsely made or forged endorsements or signatures. Id. at 1384-85. This reasoning is in accord with Edwards' and Williams' discussion of the interplay between § 510 and § 495 because it applies to the novel loophole closing portion of § 510(b). Therefore, this case has no application in the § 510(a)(2) context.

Fourth, the government's reliance on the Eleventh Circuit's Pattern Jury Instructions is misplaced. The Pattern Jury Instructions are not binding, even though the Court generally considers them a valuable resource, reflecting the collective research of a panel of distinguished judges. United States v. Metzger, No. 00-7682-Civ., 2002 WL 1083843, at *4 n.2 (S.D. Fla. Apr. 25, 2002) (not reported in the Federal Supplement Second Series). Moreover, the instruction does not buttress the government's argument; it weakens it. This is because the instruction gives no reference to agency endorsements of any kind; therefore, it does not contradict this Court's understanding of the law. Indeed, the instruction seems to comport with Jaynes' finding that endorsing a payee's name without an indication of an agency relationship on the check constitutes forgery. 75 F.3d at 1500 (citing cases from three different United States Courts of Appeals for support). Thus, the government's reliance on the Pattern Jury Instructions for its argument is misplaced.

Fifth, the government has failed to address the Jaynes case. The Jaynes case applied Selvidge's agency endorsement defense to § 510(a)(1)-(2). Jaynes stated in dicta that "[i]f the endorsement purports on its face to be that of an agent, there can be no forgery . . . even if the endorser misrepresents his or her authority." 75 F.3d at 1502. Therefore, the government's contention that the Selvidge agency endorsement defense

does not apply to § 510(a)(2) is not strong.  For the reasons set forth above, the Court finds as a matter of law that the Selvidge agency endorsement defense applies to § 510(a)(2).  Nevertheless, at this point the Court declines to consider whether Adkinson has shown sufficient evidence to invoke the defense and must deny Adkinson's motion.

### B. The Court must deny Adkinson's Motion to Dismiss Indictment

The Eleventh Circuit held that "[t]he indictment is sufficient if it charges in the language of the statute." United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004).  The Salman court also held that a district court may not dismiss the indictment even if a defendant's actions fail to violate federal law. Id. at 1267-69.  In Salman the defendant was indicted for five counts of possession of firearms, and a sixth count of possession of ammunition, by an alien "illegally or unlawfully in the United States," in violation of 18 U.S.C. § 922(g)(5)(A). Id. at 1267 (internal quotation marks omitted).  In response, the defendant filed a motion to dismiss the indictment, maintaining that he was not "illegally or unlawfully" in the United States, as a matter of law, at the time of his arrest. Id. (internal quotation marks omitted).  The district court dismissed the indictment, holding that assuming the facts to be true, the defendant's actions did not violate federal law. Id. at 1267-68.

The Eleventh Circuit reversed the district court's dismissal.  The Eleventh Circuit reasoned "[b]y looking beyond the face of the indictment and ruling on the merits of the charges against Salman, the district court in effect granted summary judgment in favor of the defendant." Id. at 1267.  However, the court stated, there is no summary judgment procedure in criminal cases, and the Federal Rules of Criminal Procedure do not provide for a pre-trial determination of the sufficiency of the evidence. Id.  Therefore, the government was entitled to present its evidence at trial

and have its evidence tested by a motion for acquittal under Federal Rule of Criminal Procedure 29. Id. The Salman court recognized that its holding "may result in legally meritless cases being sent to trial, but absent further legislative direction, it is not for the courts to filter which criminal cases may reach the trial stage by reviewing the proffered evidence in advance." Id. at 1269.

Here, the basis for Adkinson's Motion to Dismiss Indictment is analogous to the Salman defendant's – as a matter of law her actions, she argues, did not violate the federal law under which she was indicted. Nevertheless, the government is entitled to present its evidence at trial and have its evidence tested by a motion for acquittal under Federal Rule of Criminal Procedure 29 at the appropriate time. The government may also choose to re-indict Adkinson under a different statute or statutes. Whichever the case, at this point in the litigation, Salman forbids this Court from dismissing Adkinson's Indictment. While this Court sees the effect of this decision as an unnecessary waste of judicial resources, it nevertheless is bound by Salman. Jackson v. Crosby, 375 F.3d 1291, 1300 (11th Cir. 2004) ("As judges we are obligated to follow the law, regardless of whether we personally like the result of doing so.") (Carnes, J., concurring). Therefore, Adkinson's motion (Doc. 13) is denied.

**SO ORDERED**, this the 8th day of July, 2005.

                                          /s/ Hugh Lawson
                                          **HUGH LAWSON**, Judge

jmb